

# NUMBER 13-11-00197-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE WASTE MANAGEMENT OF TEXAS, INC.
## WASTE MANAGEMENT OF TEXAS, INC. D/B/A
## WASTE MANAGEMENT, PHARR, TEXAS, AND JOHN MARTINEZ

## On Petition for Writ of Mandamus.

# MEMORANDUM OPINION

**Before Justices Garza, Vela, and Perkes**
**Memorandum Opinion by Justice Vela**

Relators, Waste Management of Texas, Inc., Waste Management of Texas, Inc.

d/b/a Waste Management, Pharr, Texas, and John Martinez (collectively "Waste

Management"), filed a petition for writ of mandamus and a request for temporary stay in the above cause on April 7, 2011, seeking to compel the trial court to vacate an order compelling discovery on grounds of relevance, overbreadth, and burdensomeness. On April 8, 2011, this Court granted the request for temporary stay, stayed the trial court's order compelling discovery, and requested that the real party in interest, Romeo Garza Jr., file a response to the petition for writ of mandamus, and such response has now been filed. We deny the petition for writ of mandamus.

## I. BACKGROUND

The underlying litigation concerns a vehicular collision between Garza and Martinez, who was driving a garbage truck in the course and scope of his employment as a driver for Waste Management. According to Garza's first amended original petition, Martinez pulled away from a stop sign directly into Garza's lane of travel. Garza brought suit against relators for personal injuries. Garza served various forms of discovery requests on Waste Management, but the only one at issue in this proceeding is the following request for production:

> Produce pleadings, discovery (including corporate representative depositions, answers to: interrogatories, requests for disclosure, requests to produce documents, and requests to admit), on all other lawsuits involving incidents in which Waste Management of Texas, Inc. has been sued in Texas and in which unsafe driving on the part of a Waste Management of Texas, Inc. driver has been alleged and/or in which it is alleged Waste Management of Texas, Inc. did not employ proper safety and/or was negligent with regard to its policies for the operation of its vehicles, the training of its drivers, or in setting safety policies.

Waste Management objected to the request as follows:

2

> Defendant objects that the request is overly broad, not relevant, not reasonably calculated to lead to the discovery of admissible evidence and not reasonably limited in subject matter, geography or time. . . . Further, this request is unduly burdensome and harassing because the burden or expense of the proposed discovery outweighs its likely benefits, taking into account the needs of the case the amount in controversy, and the importance of the proposed discovery in resolving the issues . . . . Finally, Defendant objects that this request is compound and confusing.

Waste Management did not otherwise respond to this request for production.[1] Garza filed a motion to compel regarding this response, stating that the "[p]arties are currently working on resolving the discovery dispute; however, court intervention is necessary if the parties do not reach an agreement." Attached to the motion to compel was correspondence from Waste Management's counsel stating that "[a]s we discussed, we will continue to search for information related to Waste Management litigation in the South Texas region and beyond."

Waste Management filed a response to the second motion to compel discovery, supported by the January 26, 2011 affidavit of Carrie Schadle, an attorney for Waste Management. Ms. Schadle testified as follows:

> My firm has represented Waste Management since 2001. During that time, there have been approximately 100 cases which have gone into litigation. In order to determine whether such cases are responsive to Plaintiff's request, counsel for Defendant will have to identify the existing computer files relating to those cases, order whatever files may exist for those cases from archives, identify documents which may exist in this office, and request a search at Waste Management for documents relating to litigated matters.

> After those documents and files have been collected, it will take a minimum of 2-2.5 hours per file to determine whether the case falls within

---

[1] We note that the rules of discovery required Waste Management to "comply with as much of the request to which the party has made no objection unless it is unreasonable under the circumstances to do so before obtaining a ruling on the objection." TEX. R. CIV. P. 193.2; *see also id.* R. 193 cmt.2.

3

the scope of the request and what, if any documents might be responsive. At $300 per hour, the cost of identifying, collecting, searching, evaluating and producing responsive documents for the approximately 100 files since 2001 could easily exceed $70,000.00.

This cost will not include copying costs, or the costs to Waste Management of pulling its employees away from their regular work to search for documents.

These estimates will not include the time and cost associated with documents handled by other attorneys or firms. An inquiry to Waste Management revealed that there are approximately 90 other files that may represent suits filed against Defendant. The only way to identify documents for cases filed before the involvement of the undersigned firm would be to query insurance companies that carried policies of insurance for the relevant periods of time. Depending on the information available from the insurance carriers, the next step would be to seek out those files, most likely from attorneys who handled those cases. Those attorneys will have to search and will incur attorney's fees which will have to be reimbursed. While it would be impossible to determine exactly how much time such a search would take, the cost will be very high. Tracking down these documents will be far more complicated than reviewing those handled by this firm and it would be reasonable to assume that the cost of tracking down these earlier cases would be double that of the those files handled by the undersigned firm.

The text of Waste Management's response to the second motion to compel differs in some respects from Schadle's affidavit. The response says, "Waste Management has 190 cases flagged as "litigation" cases in the claims database," and "[a]pproximately 100 of these cases have been handled by the undersigned firm since 2001." The response speculates that "it is likely the volume of documents will be in the hundreds of thousands of pages," and further speculates that the costs of copies alone could conservatively exceed $25,000. The response asserts that these estimates do not take into account the 90 other suits handled by other firms, and speculates that it might cost "somewhere in the neighborhood of $75,000 or more" to recover those files.

4

Garza filed a reply to Waste Management's response to the motion to compel contending, among other things, that the discovery sought pertaining to other accidents involving Waste Management's garbage trucks and vehicles was relevant vis-à-vis his claims for faulty safety practices and training and that there was a direct relationship between the claims at issue and the discovery sought.[2]

The trial court heard the motion to compel at a non-evidentiary hearing on January 27, 2011. At the hearing, the trial court ordered Waste Management to respond to the request for production, but directed that the response should be limited to those litigation files relating to garbage trucks in Texas in the past five years. The trial court, however, agreed to hear a motion to reconsider its ruling the following week.

After the hearing, Waste Management filed a "Motion for Reconsideration and Supplemental Response to Plaintiff's Second Motion to Compel Discovery." This motion was supported by a second affidavit from Schadle, dated February 2, 2011:

> My firm has represented Waste Management since 2001. Since 2005, there have been thirty-two cases which have gone into litigation in Texas where Waste Management was represented by my firm.
>
> A conservative estimate is that it will take a minimum of 2-2.5 hours per file to determine what, if any documents in these files might be responsive to Plaintiff's request as modified by the Court. At $300 per hour, the cost of identifying, collecting, searching, evaluating and producing responsive documents could easily be at least $24,000.00. This cost will

---

[2] Garza also included an argument which we will characterize as "what's good for the goose is good for the gander." Apparently earlier in the litigation, the trial court had ordered Garza's counsel to produce medical records from a different lawsuit in which Garza had been represented by the same attorneys. The trial court had reasoned that since Garza's counsel had represented Garza in the previous litigation, counsel must be in a position to turn over medical records on that case. Thus, Garza contended that, in this case, where counsel for Waste Management admitted that they are the same lawyers who have represented Waste Management since 2001, they should have "intimate knowledge" of the litigation files and their contents.

5

not include copying costs, or the cost to pull the files from the archives.

These estimates will not include the time and cost associated with determining whether any cases that may have been handled by other firms would contain documents responsive to the request.

On February 3, 2011, the trial court held a non-evidentiary hearing on the motion for reconsideration. On March 9, 2011, the trial court issued an order granting Garza's motion to compel and requiring Waste Management to:

Produce pleadings, discovery (including representative depositions, answers to interrogatories, requests for disclosure, requests to produce documents, and requests to admit), on all other lawsuits involving garbage truck accidents in which Waste Management of Texas, Inc. has been sued in Texas in the five years preceding the date of this order, and in which unsafe driving on the part of a Waste Management of Texas, Inc. driver has been alleged and/or in which it is alleged Waste Management of Texas, Inc. did not employ proper safety and/or was negligent with regard to its policies for the operation of its vehicles, the training of its drivers, or in setting safety policies. Any material related to any person's healthcare information subject to HIPAA[3] is excluded from production and may be redacted by Defendants.

The trial court ordered production by March 25, 2011. By letter agreement, the parties agreed to extend the deadline for production until April 7, 2011. On April 7, 2011, Waste Management did not produce the documents at issue to Garza, but instead filed this original proceeding.[4]

---

[3] The trial court's order refers to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *See* 45 C.F.R. pts. 160 & 164 (2010). Pursuant to HIPAA, an individual's protected health information cannot be disclosed without the individual's consent unless disclosure is expressly permitted by HIPAA. *See* 45 C.F.R. 164.502.

[4] We note that the issuance of mandamus relief is largely controlled by equitable principles. *See In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding).

In this original proceeding, Waste Management contends by three issues that the trial court abused its discretion in overruling Waste Management's objections to the request for production because the request is: (1) not likely to lead to the discovery of admissible evidence; (2) overly broad; and (3) unduly burdensome.

## II. STANDARD OF REVIEW

Mandamus will issue if the relator establishes a clear abuse of discretion for which there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). With regard to discovery rulings, a party will not have an adequate remedy by appeal when: (1) the appellate court would not be able to cure the trial court's discovery error; (2) the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; or (3) the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *Walker*, 827 S.W.2d at 843.

As stated more recently by the supreme court, mandamus may be appropriate to correct alleged discovery errors when, for instance, the order complained of requires disclosure of privileged information or trade secrets that materially affect the rights of the relator; when discovery imposes a burden that is disproportionate to any benefit received by the requesting party; and when the trial court's discovery order compromises the relator's ability to present a viable claim or defense. *In re McAllen Med. Ctr., Inc.*, 275

7

S.W.3d 458, 468 (Tex. 2008) (orig. proceeding). An order that compels overly broad discovery is an abuse of discretion for which mandamus is the proper remedy. *In re Deere & Co.*, 299 S.W.3d 819, 820–21 (Tex. 2009) (orig. proceeding) (per curiam). Stated otherwise, mandamus relief is proper when a trial court signs an order compelling discovery that is outside the proper bounds of discovery. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

### III. RELEVANCE

In its first issue, Waste Management contends that the request at issue is a "fishing expedition" that is not likely to lead to the discovery of admissible evidence. "Fishing" for evidence is impermissible. *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996). In examining Waste Management's contention, we note that "the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (quoting *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (orig. proceeding)); *see In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 (Tex. 1999) (orig. proceeding).

Our procedural rules define the scope of discovery to include any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a); *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding); *see also Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex. 1993). Information is relevant if it tends to make the existence of a fact that is of

8

consequence to the determination of the action more or less probable than it would be without the information. TEX. R. EVID. 401. The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) (quoting *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990)).

Although the scope of discovery is broad, discovery requests must nevertheless show a "reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.*, 124 S.W.3d at 152; *see In re Am. Optical Corp.*, 988 S.W.2d at 713. Thus, discovery requests must be "reasonably tailored" to include only relevant matters. *In re CSX Corp.*, 124 S.W.3d at 152; *In re Am. Optical Corp.*, 988 S.W.2d at 713. Therefore, the preemptive denial of discovery is proper if there exists no possible relevant, discoverable testimony, facts, or material which would support or lead to evidence that would support a claim or defense. *Ford Motor Co.*, 279 S.W.3d at 664.

Waste Management asserts that the request for production at issue seeks irrelevant information and is a mere fishing expedition.[5] We first address Waste Management's contention that Garza should not be permitted to "distract attention from

---

[5] We note that Waste Management's petition for writ of mandamus places the burden of proof on Garza to "explain how the production of pleadings and discovery from 'similar' lawsuits is reasonably calculated to lead to the discovery of admissible evidence and how the request relates to the elements of his causes of action, which he should be required to do, 'as relevancy is the cornerstone of admissibility.'" We note that this Court and others have placed the burden of proof regarding relevance, or lack thereof, on the party seeking to avoid discovery. *See e.g., In re Frank A. Smith Sales, Inc.*, 32 S.W.3d 871, 874 (Tex. App.—Corpus Christi 2000, orig. proceeding) ("Generally, the party resisting discovery has the burden to plead and prove the basis of its objection."); *Valley Forge Ins. Co. v. Jones*, 733 S.W.2d 319, 321 (Tex. App.—Texarkana 1987, orig. proceeding) (holding that, as a general rule, the burden of pleading and proving the requested evidence is not relevant falls upon the party seeking to prevent discovery). We need not further address Waste Management's allegation herein because it is not necessary to the disposition of this proceeding. *See* TEX. R. APP. P. 47.1, 47.4.

the incident at hand" by including a gross negligence and exemplary damages claim. Waste Management asserts that Garza's gross negligence claim is based on his allegation that Waste Management acted with conscious indifference to the rights, welfare and safety of others by hiring a safety director for its Houston office, but by failing to hire a safety director for its Rio Grande Valley office or other areas, thus ignoring safety training and policies in the Rio Grande Valley and other areas. Waste Management thus contends that Garza should "at most" be entitled to discovery of lawsuits involving accidents with garbage trucks and drivers who worked out of the Pharr, Texas office.[6] Waste Management essentially argues that Garza amended his pleadings to include a claim for gross negligence in order to justify the breadth of his discovery request. We note in this regard that, based on the record before us, Waste Management neither attacked Garza's pleadings through motions for sanctions, by special exceptions, or by motion for summary judgment.

Garza's original petition, unlike his amended petition, did not include claims against Waste Management pertaining to the lack of a safety director in Pharr, the proper training of its drivers, the scheduling of its drivers, or gross negligence. Garza amended his petition to include these claims after deposing Martinez and a corporate representative for Waste Management, and after receiving some of Waste Management's responses to discovery. In Waste Management's First Amended and Supplemented Responses, Answers, and Objections, Waste Management revealed that it does not have a safety manager whose specific area of responsibility is the Rio Grande

_____
[6] Waste Management did not produce information within this unilaterally proposed scope of discovery under rule 193.2(b). *See* TEX. R. CIV. P. 193.2(b).

Valley District of Waste Management; Chuck Haraf is the area safety manager whose responsibility includes Pharr, Texas, and his office is located in Houston, Texas; Haraf visited the Pharr region of Waste Management in January, August, and September 2010; and two other safety professionals for the company visited the Pharr region of Waste Management in 2010.

Based on the foregoing, the trial court may have reasonably concluded that Garza's request for production is not a fishing expedition because it is not based on speculation, but is instead based on Waste Management's own responses to discovery. *See In re Sears Roebuck & Co.*, 123 S.W.3d 573, 578 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (stating that a fishing expedition is one aimed not at supporting existing claims but at finding new ones). This is not a case where Garza is attempting to justify an overbroad discovery request by proving a general corporate strategy regarding unspecified safety laws, but a discovery request specifically targeted to the safety policies and practices as they relate to the circumstances involved in this lawsuit, and as evidenced in previous discovery responses. *See Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding).

Waste Management argues that the discovery request does not lead to the discovery of admissible evidence of "reasonably similar" accidents:

> In this case, Garza alleges that Defendant Martinez pulled away from a stop sign into his line of travel. . . Even if this were true . . . this is not a case involving training, safety policies, or some esoteric application of complicated rules to a complex set of facts. This is a simple negligence case—the alleged failure to comply with a basic traffic law about which no licensed Texas driver or holder of a Texas Commercial Driver's License is unfamiliar. To suggest that an alleged failure to stop at a stop sign is the

11

result of negligent training or failure to follow a safety policy by Waste Management is ludicrous.

Waste Management thus asserts that a "more reasonable" discovery limitation "would be a limitation to those cases in which plaintiffs allege a Waste Management driver ran a stop sign."[7]

In the instant case, the request for production seeks pleadings and discovery from lawsuits:

> involving incidents in which Waste Management of Texas, Inc. has been sued in Texas and in which unsafe driving on the part of a Waste Management of Texas, Inc. driver has been alleged and/or in which it is alleged Waste Management of Texas, Inc. did not employ proper safety and/or was negligent with regard to its policies for the operation of its vehicles, the training of its drivers, or in setting safety policies.

Garza's first amended original petition asserts that the "Pharr office of Waste Management does not have any safety director, and this is a policy which emanates from corporate headquarters of Waste Management." The petition continues that "Drivers such as Defendant Martinez are not properly trained in safety and/or their work schedule is such that it promotes unsafe driving."

All of the cases cited by Waste Management in connection with its arguments pertaining to relevance concern the admissibility of evidence, not the discovery of evidence. According to Waste Management, there is a "nexus" between the admissibility of evidence and the discoverability of information, and "courts often use both

---

[7] We note that this argument conflicts with an offer made to the trial court that Waste Management would "agree to produce for the last five years all automobile accidents that occurred in Hidalgo County, or even the Rio Grande Valley." Moreover, as stated previously, Waste Management did not produce any discovery pursuant to this unilaterally selected scope of discovery. *See* TEX. R. CIV. P. 193.2(b).

types of cases when discussing discoverability." Waste Management's arguments are, to some extent, correct. The two concepts are related and courts often use both types of cases when discussing discovery. For example, in rejecting discovery as overbroad and irrelevant, the Texas Supreme Court has explained that:

> [T]he plaintiffs' requests and the trial court's order reflect a misunderstanding about relevance. American jurisprudence goes to some length to avoid the spurious inference that defendants are either guilty or liable if they have been found guilty or liable of anything before. *See, e.g.*, TEX. R. EVID. 404 (barring proof of other crimes, wrongs, or acts "in order to show action in conformity therewith"). While such evidence might be discoverable in some cases (*e.g.*, to prove motive or intent, *see id.*), it is hard to see why reneging on some other settlement offer makes it more or less probable that the insurer reneged on this one. TEX. R. CIV. P. 192.3; TEX. R. EVID.401.

*In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669–70 (Tex. 2007) (orig. proceeding).

Nevertheless, Waste's contentions herein essentially assume that the standards for discovery and standards for admissibility are wholly congruent. That is incorrect. Discovery is not limited only to information that will be admissible at trial. TEX. R. CIV. P. 192.3(a); *Eli Lilly & Co.*, 850 S.W.2d at 160 (Tex. 1993); *Jampole*, 673 S.W.2d at 573. "To increase the likelihood that all relevant evidence will be disclosed and brought before the trier of fact, the law circumscribes a significantly larger class of discoverable evidence to include anything reasonably calculated to lead to the discovery of material evidence." *Jampole*, 673 S.W.2d at 573; *see Allen v. Humphreys*, 559 S.W.2d 798 (Tex. 1977) *overruled on other grounds*, *Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992); *In re Nolle*, 265 S.W.3d 487, 491 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding).

13

Based on the foregoing, the trial court may have concluded that the information sought in the request for production is relevant and discoverable because it has a tendency to make the existence of a fact that is consequential to the determination of the action—that is, whether or not the accident was caused because the Pharr region of Waste Management did not properly train its drivers in safety matters, or improperly scheduled them, or because the Pharr region of Waste Management did not employ a safety director when other Waste Management locations did—more probable or less probable than it would be without the evidence. *See* TEX. R. EVID. 401. An examination of the state-wide distribution of litigation files in comparison to Waste Management's regional safety offices would be relevant to Garza's claim that the Pharr office of Waste Management is deficient in its safety training and management. Waste Management's first issue is overruled.

## IV. OVERBREADTH

Waste Management contends in its second issue that the discovery request is overly broad because the scope of discovery is not limited to the subject matter of the suit, that is, whether Martinez was negligent or Waste Management acted negligently toward Martinez in training him or scheduling him, thereby causing the accident. Waste Management contends that the request is not limited in scope to documents concerning Martinez's training and is not limited in time to the years that Martinez was employed by Waste Management.

Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad. *See In re CSX*

14

*Corp.*, 124 S.W.3d at 152; *see In re Am. Optical Corp.*, 988 S.W.2d at 713; *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995); *Texaco*, 898 S.W.2d at 815. A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information. *See In re CSX Corp.*, 124 S.W.3d at 153; *In re Am. Optical Corp.*, 988 S.W.2d at 713. Overbroad requests for irrelevant information are improper whether they are burdensome or not, so evidence is not necessary to support an objection if the discovery requests themselves demonstrate overbreadth as a matter of law. *See In re CSX Corp.*, 124 S.W.3d at 153; *In re Union Pac. Res. Co.*, 22 S.W.3d 338, 341 (Tex. 1999) (orig. proceeding); *In re Mem'l Hermann Healthcare Sys.*, 274 S.W.3d 195, 202 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). However, a reasonably tailored discovery request is not overbroad merely because it may include some information of doubtful relevance, and the "parties must have some latitude in fashioning proper discovery requests." *In re Am. Optical Corp.*, 988 S.W.2d at 713; *Texaco*, 898 S.W.2d at 815.

In analyzing the discovery request at issue, we are guided by numerous cases which have addressed overbroad discovery requests. *See, e.g., In re Allstate County Mut. Ins. Co.*, 227 S.W.3d at 670 (holding that requests for transcripts of all testimony ever given by any Allstate agent on the topic of insurance; every court order finding Allstate wrongfully adjusted the value of a damaged vehicle; personnel files of every Allstate employee a Texas court has determined wrongfully assessed the value of a damaged vehicle; and legal instruments documenting Allstate's status as a corporation

and its net worth were overbroad); *In re CSX Corp.*, 124 S.W.3d at 153 (stating that request to identify all safety employees who worked for defendant over a thirty-year period qualifies as a "fishing expedition"); *In re Am. Optical Corp.*, 988 S.W.2d at 713 (stating that request for production of all documents the defendant had ever produced on any of its products over the course of its fifty years in business was overbroad and of questionable relevance); *K Mart Corp.*, 937 S.W.2d at 431 (stating that request for information relating to all criminal activity on all K Mart property over last seven years was overbroad); *Dillard Dep't Stores, Inc.*, 909 S.W.2d at 492 (stating that a request requiring a 227-store search in twenty states for documents over a five-year period was overly broad); *Texaco, Inc.*, 898 S.W.2d at 814–15 (stating that request for "all documents written by [defendant's safety director] that concerned safety, toxicology, and industrial hygiene, epidemiology, fire protection and training" was overbroad); *Gen. Motors Corp. v. Lawrence*, 651 S.W.2d 732, 734 (Tex. 1983) (stating that requests concerning fuel filler necks in every vehicle ever made by General Motors were overbroad); *see also Fethkenher v. Kroger Co.*, 139 S.W.3d 24, 30 (Tex. App.—Fort Worth 2004, no pet.) (concluding that discovery request was overbroad where it asked store to describe, in detail, any previous incidents pertaining to automatic door malfunctions at all 188 stores in southwest region; court noted that appellant "failed to narrow the request in a manner that would heighten its relevancy"); *In re Lowe's Cos.*, 134 S.W.3d 876, 880 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding) (holding that discovery order was overbroad where it allowed plaintiffs to access computer data without any limitation as to time, place, or subject matter and print data concerning falling merchandise accidents for

an unlimited period of time preceding the accident in this case and for an unlimited geographic area).

In examining the appropriate breadth of discovery, it is fundamental that each lawsuit concerns a specific claim arising from a specific set of facts. Those seeking discovery, however, are often interested in learning about related accidents, products, or claims culminating in litigation. Such requests might be appropriate or might be overbroad depending on the relationship between the request for production and the claims at issue in the lawsuit. *See, e.g., In re Oncor Elec. Delivery Co. LLC*, 313 S.W.3d 910, 910 (Tex. App.—Dallas 2010, orig. proceeding) (holding discovery order requiring relator to produce every document from every lawsuit in which it has been involved for the past five years, with no limitations as to subject matter, was overly broad as a matter of law.); *see also In re Valvoline Co.*, No. 01-10-00208-CV, 2010 Tex. App. LEXIS 3696, at **20–21 (Tex. App.—Houston [1st Dist.] May 14, 2010, orig. proceeding) (mem. op.) (granting mandamus relief where "benzene-related lawsuits" was undefined in the discovery requests and the request was not limited to suits containing claims similar to that suit).

It is clear that, under certain circumstances, parties are entitled to discover information about other lawsuits. *See, e.g., Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex. 1992) (referencing Chrysler's failure to "disclose all similar lawsuits," but concluding that plaintiff was not harmed by the omission); *Humphreys v. Caldwell*, 881 S.W.2d 940, 945 (Tex. App.—Corpus Christi 1994, orig. proceeding) (concluding that relator failed to meet burden to show that responding to interrogatory "regarding all

17

lawsuits in Texas within the last five years involving similar claims in which State Farm had been a party" was overbroad or unduly burdensome); *State Farm Mut. Auto. Ins. Co. v. Engelke*, 824 S.W.2d 747, 751 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding) (compelling answer to interrogatory about lawsuits for five-year period). Thus, discovery as to other lawsuits has been allowed when the information sought is relevant, that is, when the other lawsuits have a material connection to an issue in the case, or present the same or similar issues, or are factually similar. *See, e.g., Allen*, 559 S.W.2d at 803 (approving a request for the production of "all complaints, lawsuits, or inquiries, including all correspondence, documents, investigative reports, or any paper by which the defendant responded to these complaints, claiming that persons have contracted cancer as a result of breathing fumes," because party could establish pattern of disease and because that information was "unavailable from any other source"); *In re Rogers*, 200 S.W.3d 318, 324 (Tex. App.—Dallas 2006, orig. proceeding) (noting that requests for documents from and information concerning other lawsuits were "not irrelevant on their face to the issues at hand" but the trial court abused its discretion in ordering production because some of the documents ordered produced were subject to confidentiality agreements or protective orders in the other lawsuits); *see also In re Ernst & Young, L.L.P.*, No. 05-02-00352-CV, 2002 Tex. App. LEXIS 2986, at **4–5 (Tex. App.—Dallas April 30, 2002, orig. proceeding) (not designated for publication) (requiring the production of pleadings where the defendant was sued for audit or review work, professional negligence, or accounting malpractice where "[t]hese are the same or similar matters at issue in this case" because it was "permissible discovery"). *Cf. In re Colonial Pipeline*

18

*Co.*, 968 S.W.2d at 942 ("While the plaintiffs may be entitled to production of any relevant discovery from the related cases 'as they are kept in the usual course of business,' relators cannot be forced to prepare an inventory of the documents for plaintiffs."). As recently stated by the First District Court of Appeals, when discovery of material related to other lawsuits and complaints is allowed, the information sought has a "direct, material connection to the instant litigation." *In re Nolle*, 265 S.W.3d at 495–96.

In the instant case, the trial court's order limits the request for production to the temporal period of five years, the geographical region of Texas, and the subject matter of litigation files concerning garbage truck accidents where the case involved unsafe driving, and negligent or improper policies regarding vehicle safety, training, or operation. The cases cited by Waste Management do not support the proposition that any of these limitations is per se overbroad. The litigation files sought are factually similar to the case at hand, are closely related in temporal proximity, and concern similar legal issues. Accordingly, the trial court may have concluded that the request for production at issue was relevant and not overbroad.

We note that Waste Management asserts that the litigation files may include documents which contain private or confidential information, such as medical and financial information about third parties, including, for instance, social security numbers, and orders pertaining to child support obligations. Waste Management also asserts that certain files may be subject to confidentiality agreements. In this regard, we note that the trial court expressly ordered that "[a]ny material related to any person's healthcare information subject to HIPAA is excluded from production and may be redacted." In this

19

proceeding, Waste Management has not identified any specific private or confidential information in its litigation files that would be subject to production.

Waste Management's argument is well-taken insofar as the production of documents in one lawsuit does not necessarily mean the documents may be produced without restriction in an entirely different lawsuit. Some of the documents ordered produced may contain confidential data or may be subject to confidentiality agreements or protective orders in the other lawsuits. *See In re Rogers*, 200 S.W.3d at 324. As stated by the Texas Supreme Court:

> [W]e are mindful that resolution of this discovery dispute may affect more than the immediate parties to this litigation. The possibility exists that the rights of CI Host's customers and others may be detrimentally affected or even abrogated by disclosure of some information on the tapes; these third parties may have other legal bases for objecting to disclosure of the information on the tapes. Our discovery rules do not require notice to third parties so that they might have an opportunity to be heard on their own objections. Yet, we are loath to allow CI Host to unilaterally waive its customers' privacy rights by its failing to adhere to the discovery rules. *Cf. Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex. 1993) (taking into account compelling public interests in determining scope of discovery in products-liability suit). It therefore falls upon the trial court to give serious consideration to these interests. A protective order forbidding disclosure of any trade secrets on the tapes is already in place, and we are confident that the trial court will give due consideration to any other privacy interests at stake as this case progresses.

*In re CI Host*, 92 S.W.3d 514, 517 (Tex. 2002) (orig. proceeding). When a party asserts that only part of a request is protected in such circumstances, the party must produce what is discoverable, must assert any applicable privileges, and must segregate and produce to the court in camera the materials that it seeks to protect from disclosure. *See id.* Accordingly, Waste Management should produce all documents in the lawsuits listed

20

in the request for production that do not contain private data and that are not subject to a confidentiality agreement or protective order in the other lawsuits, and should request an in camera hearing regarding those other documents containing allegedly confidential or privileged matter in order for the trial court to give due consideration to the privacy interests at issue in the requested documentation. *See id.*

Waste Management's second issue is overruled.

## V. UNDULY BURDENSOME

In its third issue, Waste Management contends that the discovery request is unduly burdensome given the likely benefits of the discovery. Waste Management supports this contention by reference to Schadle's affidavits and the estimated cost of almost $25,000, "without even considering the extra added burden" of making sure that Waste Management redacts the responsive documents to comply with HIPAA.

Under the rules of civil procedure, discovery should be limited if it is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive. *See* TEX. R. CIV. P. 192.4(a); *In re Stern*, 321 S.W.3d 828 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding). Further, discovery should be limited if the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* TEX. R. CIV. P. 192.4(b); *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 317 (Tex. 2009) (orig. proceeding).

21

The fact that a discovery request is burdensome is not enough to justify protection; "it is only undue burden that warrants nonproduction." *ISK Biotech Corp. v. Lindsay*, 933 S.W.2d 565, 568 (Tex. App.—Houston [1st Dist.] 1996, no pet.); *see In re Alford Chevrolet-Geo*, 997 S.W.2d at 181 (requiring demonstration of undue burden or harassment); *In re Energas Co.*, 63 S.W.3d 50, 55 (Tex. App.—Amarillo 2001, orig. proceeding). A discovery request will not result in an undue burden when the burdensomeness of responding to it is the result of the responding party's own "conscious, discretionary decisions." *ISK Biotech Corp.*, 933 S.W.2d at 569; *see In re Whiteley*, 79 S.W.3d 729, 734–35 (Tex. App.—Corpus Christi 2002, orig. proceeding). A party resisting discovery cannot make conclusory allegations that the requested discovery is unduly burdensome but must instead produce some evidence supporting its request for a protective order. *In re Alford Chevrolet-Geo*, 997 S.W.2d at 181; *In re Energas Co.*, 63 S.W.3d at 55.

Waste Management provided a specific time and cost estimate for the discovery via testimony that the request would require the production of thirty-two files at approximately two and a half hours per file and its counsel would charge $300 per hour for the production. According to the testimony, the production did not include the costs of copying or recalling the files from archives. In the instant case, the trial court may well have determined that the alleged costs were excessive given that the trial court specifically referred to these estimates as "guestimates." Moreover, the trial court may have determined that the charge of $300 hourly was excessive.

Further, given the paucity of information before trial court and this Court, it is difficult to conclude that the trial court abused its discretion in refusing to limit the discovery on grounds that it causes an undue burden. Waste Management asserts that Garza could more easily and less expensively obtain the same information by deposition; however, Waste Management does not assert or provide evidence that any specific person could provide the requested information. There is no information in the record regarding the amount in controversy or the parties' resources. We do not know how Garza was injured, although counsel asserted in hearing that his incurred medical expenses approximated $60,000, nor do we know what compensation Garza is seeking in this lawsuit. Moreover, Waste Management did not provide testimony pertaining to how many litigation files that might be responsive had been handled by other firms, although, based on arguments at the trial court's hearings in this matter and the text of the petition itself, the parties may have chosen to focus solely on the thirty-two files handled by its current firm. *See BASF Fina Petrochemicals L.P. v. H.B. Zachry Co.*, 168 S.W.3d 867, 875 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding that nonparties do not recover their attorneys' fees incurred in complying with a subpoena). Without objective data, such as information regarding the foregoing matters, it is difficult to evaluate the extent of the burden involved for Waste Management and balance that burden against Garza's legitimate interests in obtaining that information, and even more difficult to conclude that the trial court abused its discretion. Accordingly, it was at least within the discretion of the trial court to determine that Waste Management failed to carry its burden of proving burdensomeness as a justification for refusing to produce.

Waste Management's third issue is overruled.

## VI. Conclusion

Based on the record presented, the trial court did not abuse its discretion by ordering Waste Management to produce the discovery at issue herein. We lift the stay previously imposed in this matter. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We deny the petition for writ of mandamus.


ROSE VELA
Justice

Delivered and filed the
31st day of August, 2011.